We'll hear argument in Newark Parents Association v. Newark Public Schools. Scott Michaelman, American Civil Liberties Union, for Plaintiff's Appellant's Newark Parents Association, et al. I'd like to reserve three minutes for rebuttal, please. Grant. May it please the Court. For all its technicalities, this case requires no more than a pedestrian application of this Court's settled law. It is squarely controlled by this Court's decision in Sabree v. Richmond. I can see why you focus on Sabree, and I can see why you want us to focus on Sabree. But speaking only for myself, I think we probably pushed the limits when we decided Sabree, in terms of what Congress quote-unquote unambiguously conferred and to whom. Well, Your Honor, be that as it may, Sabree remains this Court's settled law, and this would not represent an extension of Sabree. How can you say that, Mr. Michaelman, when Sabree itself was very careful to say that the structure of the act in question, the Medicaid Act, seemed to militate against the finding of an individual right, but that the Court took particular comfort from the fact that that same statute had been in Wilder, found to apply and give individual rights, and then noted three reasons why. Why don't I take you to Sabree and have you follow this with me, and get you to answer this, if you would. I'm looking at the language on, I guess this is page 185, yeah, 185. It says, in Wilder, the Court permitted a 1983 action brought by health care providers to enforce a reimbursement provision of Title 19 of the Social Security Act, and then goes on to say, according to Gonzaga, the Wilder Court was persuaded because the relevant Medicaid provisions, one, explicitly conferred specific monetary entitlements, two, required the United States to pay an objective monetary entitlement to individual health care providers with no administrative means of enforcing the requirement, three, because Congress left no doubt of its intent for private enforcement. Now, are you saying that this case involves a specific monetary entitlement? No, Your Honor. However, neither did the provisions at issue in Sabree. What Sabree involved was the provision of specific benefits, namely medical assistance. And here, again, we have a provision that involves specific benefits, specifically notification and tutoring. So the provision of monetary assistance was not a necessary factor for the Court to hold the rights enforceable in Sabree. But Sabree said that Wilder upheld the exercise of an individual right under statutes that contained similar or, in the case of Wilder, identical provisions. So didn't Sabree, didn't that terrific panel in Sabree happen to focus in on how important the Wilder's decision about a monetary kind of focus benefit was in making the decision that the benefits at issue in Sabree were like that? Absolutely, Your Honor. But I think there's a difference between relying on a prior decision and completely parroting it. The Sabree provisions are actually quite different than the Wilder provisions, even though they appear in the same act. The Sabree provisions, in fact, quite closely resemble the provisions at issue in this case. I don't disagree with that to a certain extent. I mean, as in Sabree, the provisions here clearly and unambiguously require the state to provide notice and SES if requested. But that's not the answer to the question before us. The question is whether these provisions create rights enforceable by law, by individuals. And so even if they're similar provisions in the sense of what is required, that doesn't answer the bottom line question here. Well, two points I'd make in response, Your Honor. First, the focus of the Sabree opinion, as I read it, is on the text of the provisions. So the similarity between the textual provisions is very important. And second, with respect to the structure, the Sabree court actually found that the structure of the Medicaid Act militated slightly against enforcement and nonetheless found that the language was … Unbalancing. Unbalancing. Because on the balancing, what Congress did was unambiguous in terms of individual enforcement. Yes, Your Honor. There's a Supreme Court opinion in Wilder that emphasized that as to that statute, right? But not every provision of the Medicaid Act is necessarily enforceable. And that's what blessing teaches us, that we have to go provision by provision. I'm certainly not up here suggesting that this court should find every provision of the No Child Left Behind Act enforceable. Far from it. Let me try to pick up on something that Judge Barry said at the outset. There's a good argument you have that a lot of the language in this particular act and in the act that was under review in Sabree was the same. And, in fact, some of the words are darn close to the same. But you also have to look, as she noted, as Judge Barry noted, at the statutory structure. When you look at the structure here, the picture that would seem at first blush to be in your favor, at best gets awfully murky. Let me give you some examples. Sure. The provisions here overall appear much less mandatory. And three examples of that. Where all the schools are served by a local educational agency are failing, the requirement that the local educational association must transfer students is converted into the more vague and open-ended requirement that the local educational agencies, to the extent practicable, establish a cooperative agreement. Secondly, the requirement that the local educational agencies provide students and failing schools access to the SES provisions, that can be waived at the direction of the relevant state educational agency. Third, the enforcement provision of the No Child Left Behind Act merely directs that the state, any state that fails to meet its requirements, may have the secretary withholding funds. In addition, the overall focus of the No Child Left Behind Act appears to be more goal-centered. The preamble has 12 statements of purposes. And only the very last one, the 12th, talks about affording parents substantial and meaningful opportunities to participate in the education of their children. And I could go on and on. It just looks as if while the statute identifies increased accountability to parents as a good thing, the general focus is on the goal of increasing educational quality in our school systems. And they also, and when it's not up to snuff, the enforcement appears to be centralized in the hands of the secretary of education. Your Honor, I think those are four very important points, and I'd like to respond to each of them. Absolutely. First, with respect to the transfer provision, you noted that the transfer provision is a little vaguer. It's a little less mandatory. I think that's absolutely correct, Your Honor. And that's why we're not actually seeking to enforce the transfer provision. Only the tutoring provision, the notification provision, and the teacher policy. You're not saying you would transfer. You just want notice that you can. Absolutely. And the parents are entitled to that right so that they can attempt to exercise it and they can put pressure on the school district to allow them to exercise it, which is why notification is important. So we're not actually attempting to enforce that provision. Second, the fact that access to SES can be waived might suggest a more aggregate focus if the statute wasn't so very specific about the circumstances in which waiver is permitted. It's only permitted if the state finds that, first, that no SES providers are available, and, second, that the LEA can't provide the tutoring itself. That suggests to me that this isn't about an aggregate focus or a general scheme. It's about a very specific limitation on the substance of the right. So it doesn't go to enforceability, Your Honor. It goes to a very particular case in which the right is simply not available. Now, if defendants would like on remand to make that factual demonstration or apply to the state for a waiver, they're absolutely free to do that, but that doesn't defeat enforceability of the right when it is available. I think I heard you just assert that there's an individual focus instead of an aggregate focus, and I didn't follow your logic because when I read the statute, I had somewhat the same impression that you're hearing from Judge Ambrose, which is that this was aimed at helping school systems lift their gain, and that in the words of the Supreme Court in Gonzaga, as they describe FERPA, in fact, I think you might even be able to insert the language, that under its spending power, Congress conditioned the receipt of federal funds on certain requirements relating to, in this instance, testing and measures and trying to bring parents into the loop. Now, how is this different from the aggregate focus, which the Supreme Court said was clear in FERPA? Instead of just saying, well, it's not an aggregate focus, explain to me why it's not. Absolutely, Your Honor, and I think this is an important point, too. The part that we believe is individually focused is the specific rights we're trying to enforce. We can see that many provisions throughout the statute have an aggregate focus. Many of them talk about the relationship between the LEA and the states and the federal government, but the lesson of blessing, a unanimous holding of the U.S. Supreme Court, is that this court must look at the particular provisions, and that's what this court did in Sabree, and that's what is appropriate here. So these provisions, by focusing on the recipients of the benefits, the parents. They're focusing on the LEA. They're focusing on the LEA. Every one of the ones you're trying to serve, they don't say, notice the parents begins with a local educational agency shall. The next one, state educational review, says a state shall. It doesn't say parents will get. Supplemental education services under E1 says the local education agency serving such school district shall. In fact, in each of these, it's framed as a direction to the local education agency about what it's supposed to do for students generally and parents generally. And there's nothing in the penalty section that gives the parents any right to do anything if there is a, quote, unquote, violation. Not even an administrative appeal is mentioned. In fact, just the opposite. When you look at 6318A, which talks about this entitled parental involvement, it says in general, A1, local LEA may receive funds under this part only if such agency implements programs, activities, and procedures for the involvement of parents in programs assisted under this part consistent with this section. Such programs, activities, and procedures shall be planned and implemented with meaningful consultation with parents of participating children. It seems like the penalty is if you don't do this, you lose funding. That looks like an aggregate purpose here. Your Honor, I see my time has expired, but I'd like to respond to the bench's questions, if I may. First of all, to Judge Jordan's question about the focus on the funded agency, Your Honor is absolutely correct that the subject of the sentence is the LEA or the state. But that was the exact same structure was true in Sabree. In Sabree, the provisions at issue spoke directly to the grantee and said a state shall provide. Likewise, in this statute, the provisions at issue say an LEA shall provide. So the structure is, in fact, exactly parallel. But Horton said in Sabree that, quote, the provisions do not focus on the entity regulated rather than the individuals protected, which was the whole point of Sabree. But Your Honor said that in spite of the fact that each of the provisions began with a state shall provide because they went on to state exactly what must be provided and to whom, which was the focus, I believe, of Your Honor's analysis. Under that reasoning, would there ever be a circumstance where something had an aggregate focus? Because any time a statute directed an agency of a state or the federal government to do something, which down the line would benefit somebody, you could make the argument that, well, there's a person or group of people who will be benefited by what happens, and therefore there's an individual focus. Where's the end of your argument, or is there one? Well, I think the Gonzaga case represents a nice example of a situation in which the provision spoke about students only glancingly in the context of a policy or practice. But in Sabree, this Court considered a statute that mandated specific benefits to be provided to all eligible individuals under the Medicaid Act. But here, if you agree that the focus of the Act is the LEA, or if we were to find that the focus of the Act is the LEA, the entity regulated, then by definition don't we also find that the parents and the students are one step removed from the intended beneficiary, and we're right into Gonzaga? Your Honor, I absolutely do not concede, and I would urge Your Honors not to find that the focus is on the LEA just because the LEA happens to be grammatically the subject of the sentence. In Sabree, the grantee was the subject, and similarly here. That's clearly unambiguously what Congress did. So now we're playing with what is the subject of the sentence and what is the second subject of the sentence. The argument almost suggests the answer, doesn't it? I think a comparison to Sabree shows that these provisions are absolutely on all fours with the provisions in that case. Each one begins by speaking to the grantee, a state or an LEA, but then goes on to provide a mandatory obligation using a mandatory verb, shall or must. It explains exactly what must be provided. I understand your grammatical argument, but I don't think, and maybe it's because there isn't a very telling answer to this, but I'd like you to take a crack at it if you could. As I read Sabree, and I won't speak for my colleagues who wrote and were on the panel, but it appeared to me that the court was doing just as Judge Berry said here and taking something to what might be viewed as the outer limit, in part because the Supreme Court of the United States had on identical statute, the identical statute, made a particular finding about what was the focus. It's pretty hard to look at the Supreme Court and say, well, you got it wrong when it said what the unambiguous focus is. But we're not looking at that same statute. We're not looking at monetary benefits or monetary style benefits. We're looking at a statute with a generalized statement from Gonzaga that we have to find an unambiguously stated intent to benefit the parents. Now, I understand the grammatical argument, so without resort to that again, help me understand what it is that makes it unambiguous in the structure of the Act, in the individual parts of the Act, that when Congress sat down and passed this, they meant to make school districts across the country subject to litigation when a parent didn't like the notice it got or didn't get notice it should have gotten. I would say what makes it unambiguous, what makes it clear, just like what made clear in Sabree, is that the state plan must, or I'm sorry, the LEA shall arrange for the provision of services to eligible children. It must, it shall provide notice to parents. The parents and the students were clearly the focus of the statute. And furthermore. What happens if they don't? Funding is pulled. What happens if they don't? The funding is pulled. That's right, Your Honor. But in Sabree, the court dealt with exactly the same administrative enforcement mechanism. Exactly the same. The secretary in that case had the authority to withdraw the funds if the conditions were not complied with. And yet, this court found that no barrier to individual enforcement as just following the court in Wilder, which also found that an administrative funding withdrawal provision was not inconsistent with private enforcement. In fact, the Supreme Court only finds resort to 1983 precluded when the administrative scheme is large and comprehensive, as in cases where. Let me ask you. I'm sorry to interrupt. In FERPA, the plaintiff was saying, I've been specifically wronged. Information, my private information was released. And there's a law that says they're not supposed to do that. And I'm the beneficiary of that law, which says to educational institutions, you may not release private information about students. And they did it. And I want relief. And the Supreme Court, looking at that, said that's just not what Congress was getting at at all. Now, in this instance, and I don't discount for a second that the parents and the students in the Newark Public School District feel very strongly about what they should be receiving from their educational institution. And I emphasize, you know, my questions, I won't presume to speak for my colleagues, but I bet they feel the same way, are not intended to discount those powerful feelings that people have when you get to a jugular issue like the education of their children. But as we look at how the Supreme Court treated FERPA in the Gonzaga case, how can we say that somebody who comes in and says, hey, I was personally wrong by the release of my private information, there's a statute that forbids it, is somehow less a target of Congress's intent to benefit a parent and a student than parents and students here who say, I'm supposed to be getting something I didn't get. In both that case and this, it seems Congress is trying to get the institution to do something with the hope that down the road it benefits students instead of reaching directly to students. Why is it different from FERPA? I think it's different because the structure is different, Your Honor. The provision in FERPA spoke to availability of funds under any program to any agency which has certain policies or practices and then went on to describe the prohibited policies or practices. Whereas this statute, exactly like the provisions in Sabree, issues a direct command that the funded agencies, the LEA, must provide certain benefits to certain specifically named individuals. That's not, as in the case of the Gonzaga statute, removed at all. In fact, it's direct provision to the benefited individuals exactly as the text of the provisions in Sabree read. And I think ultimately what's most important here is a focus on the language and the structure of the provisions, which was absolutely this Court's focus in Sabree and the Supreme Court's focus in Gonzaga, and the fact that a minimal administrative scheme such as this one, a mere funding withdrawal, is not enough to foreclose the 1983 remedy under the Supreme Court's decisions in Smith, C. Clammers, and Ranchos Palos Verdes, as well as this Court's decision in A.W. versus Jersey City. We'll get you back on rebuttal. You've had a fair amount of extra time. Thank you. Thank you, Your Honor. And, Mr. Herman, if you need extra time, you will have it as well. Thank you. May it please the Court, Adam Herman from the Office of the General Counsel of the Newark Public Schools on behalf of the appellees, Newark Public Schools, Bolden, Chavis, and Trotman. When is there an unambiguous intent to confer an individual right? So if you're writing an opinion, what's the principle that you would analyze this? I'm sorry. The principle I would analyze it is under the text and structure of the specific provisions. Obviously, Congress, they're in the business of writing legislation and laws, and if they had the intent in this particular case to confer the individual rights to the parents and the schoolchildren, they could have very well, as the panel discussed before, could have phrased the terminology different. They could have made the focus and the language on that the parent and the student shall have a right, just as you did in certain. A cynic might say that what really is happening is that Wright and Wilder are now outliers, and that if Congress really wants to unambiguously confer an individual right, they have to put into the legislation, we are unambiguously conferring an individual right. And, Your Honor, I mean, in addition to that, to the specific provisions, obviously Congress could have also put in an enforcement provision in here. They specifically, unlike in Sabree and Wilder, the provision wasn't buried in a different part of the statute. Congress specifically drafted a provision called penalty and went on to explain what would happen, whereas in Sabree it was more buried in the bottom of the statute. How much funding does the Newark Public Schools receive from the federal government? I'm sorry? How much funding do the Newark Public Schools receive from the federal government? I'm not sure, Your Honor. Do you know what percentage? I'm sorry. I don't know that information. We obviously do receive money from the federal government, but in terms of percentages or dollars amount. Have you sent the notice out that the parents want yet? Well, Your Honor, we obviously, this case, in terms of the record, it was based on the complaint and the motion, so there wasn't a full record. But there were, and we dispute and deny the allegations in the complaint that notices weren't sent out and that notices weren't sufficient. And even at a point where they may have been. Would that boot the case? If you'd actually sent the notices, what would the complaint be? Well, that's a concern that I have and the district has, because what appellants want to argue is that even if they got notice, they could come to court and we have at least 30,000 students who may be eligible for these type of notices and services. And if a parent reads the notice and doesn't, you know, wants to make an argument that it's not clear or they don't understand it, under appellant's argument, they would be able to file a complaint in federal court and you're talking, you know, 30,000 just in my district alone. But in terms of you have issues where, you know, if a parent moves and doesn't notify the district, they're going to argue that they didn't get the notice. And this was in no way envisioned by Congress. Is the not getting a notice, has that been a consistent complaint with respect to the No Child Left Behind Act? In terms of our district, in terms of, I mean, aside from the complaint filed by appellants, that was the first that we became aware of it, that there was, you know, at least three parents that were alleging. And I may be off with the numbers in terms of the complaint. I know they're seeking to get a class action. But in terms of the name plaintiffs in the case, that was when we first were advised, you know, by parents. Is there anybody else that you know of that's made complaints that they have not received the notice that's required under this act? I know a couple years ago, and appellants refer to this in their complaint, that there was an audit done by the United States Department of Education. And I'm not sure if that's what you're asking about. But I think that gives another example of if the district or any local education agency was maybe not in compliance or not doing what it's supposed to do, that that's what the federal government, the Department of Education comes in, evaluates what has been going on. They tell us, listen, you know, maybe you need to get your notice procedure in order, or in this particular case, your letters maybe weren't as clear as they should have been to allow parents to understand the rights. So please go ahead, revise and presume it to our direction. And that was, in fact, done. If you're a parent and you're concerned about the education of your child and you're not getting the notice, what is a parent to do? I'm sorry? If you're a parent and your child is in a substandard school and it turns out that there have been failing grades given to some schools, some teachers as well, and you, the parent, are not given notice of that, what are you supposed to do? I mean, if the parent's not given notice, I mean, there's obviously – And they later find out about it. What is the parent supposed to do in order to make sure that the school system abides by the requirements of this statute? Well, in addition, Your Honor, to maybe talking to the superintendent of the school district and explaining that I as a parent didn't get notice and they could figure out what went wrong, obviously the recourse is to report it to the commissioner of education of the United States Department of Education and explain that maybe there's a problem. And they would come in, as they did a couple years back, and perform an audit and to see if there is a real issue as to what is – Do you have to certify that you've given notice to get the funding? There's a certification requirement that notification, requisite notification has been provided? That I'm not 100% sure about, Your Honor. I know that we do comply and we do keep records of notices that have gone out because there's – with 40,000 students, they keep a mailing list. And obviously with that, you can't guarantee. And if a parent moves – I don't mean to each individual. Right. But just some sort of a certification to wherever the money comes from that we have complied with all of the provisions of the No Child Left Behind Act and send the check to this address. I'm not sure if there's a specific certification that would be filled out with regard to that, but that's where the audit comes into play because the federal government is coming and looking as to – Is the audit done as a matter of course or is it only in response to a complaint? I think it's done as a matter of course. It may be done in response to a complaint, depending on how many complaints and how often they want to do it. But I believe, you know, based on the structure of the statute, that's what's intended. The focus is on obviously the state and the local education agency doing what they're supposed to do. And since the funds are coming from the federal government, they have the obligation to look and make sure that everything's going right. And if they're not going right, they would give directions to the district, as happened in this case, to revise a notice. And then, you know, if worse comes to worse and it's not revised, you pull right on the penalty phase and obviously the district would not receive or the local education agency would not receive funding based on their inability to comply with the No Child Left Behind. Let me ask you, if I can, if you'd respond directly to the grammatical argument made by your opponent, Mr. Mike Lynn took us back repeatedly to the sentence structure, which he says is just the same as the structure that was analyzed in Sabree. So why isn't the conclusion that's drawn by the appellants here the correct conclusion, the same kind of language means same kind of result is in order, an individual focus and therefore individually enforceable rights? In terms of, just to preface my answer, I believe the panel discussed that earlier. It's really not just, and I think the case law demonstrates, it's really not just what the structure and what the wording looks like. You have to look at everything in a whole. But in terms of the structure, I would disagree that it's identical. There may be some language that is similar, but the way that it's set up, there are different individual sentences and they all start with what the state, what a local educational agency should do and shall do, and it's provide notice. But in terms of- Your opponent says that's precisely analogous to what the Medicaid statute said in Sabree, where it focused on what the payor was supposed to do. So if you're drawing a language difference for us, I'm missing it. Help me understand the difference. In Sabree, everything was contained in the one paragraph. In this particular instance, there's different provisions and they all explain- I see. So what you're saying is the repeated use of the local education agency as the subject of the provisions is, therefore, a repeated emphasis that this is not the individual, it's the agency. Have I understood you? Yes, Judge, in conjunction with other parts of the statute, which the panel discussed before that, everything would be focusing on the entity and not the specific individual. Do you know of any instance where the Secretary of Education has, in response to complaints, cut funding? With regard to my district in particular? Any district. I'm not aware of any, as I stand before Your Honor today, aside from the audit that was done with the district and the intent behind that. You've said that you think that there's a distinction between the case we've got now and Sabree because, if I understood you right, you said something along the lines of the No Child Left Behind Act creates a more complex relationship between the federal and states than does the Medicaid statute. I'm wondering how much you really believe that statement. Doesn't the Medicaid statute strike you as a pretty complex thing that creates an interweaving of state and federal regulatory interests? How is the structure of the No Child Left Behind Act's anticipated enforcement any more complex than the Medicaid statute? I'm not going to dispute that the Medicaid statute is obviously complex. But in terms of No Child Left Behind, it's set up as you have the federal government, you have the state, and you have the local education agency. So you have these different layers of who's responsible for doing what, who's responsible for checking to enforce that things are done pursuant to the statute. Wouldn't really hang your hat on that, though, would you, on the assertion that there's some extraordinary complexity in No Child Left Behind as opposed to Medicaid? No, Your Honor. But my point, I guess, in the brief was just to explain that. From the provisions that were at issue in Sabree, it was discussing about a state plan, so it would be between the state and the providers and the patients that were in search of the medical services, where with No Child Left Behind, Congress's intent was obviously not to allow or permit an individual cause of action because you have these different layers and the ability for the penalties that would be subjective if there was no compliance. Thank you. Okay, thank you. Thank you. You're not all. Your Honors, I'd like to briefly address three points that came up in my opponent's argument. First, the notion that the plaintiffs actually did receive notice is obviously sharply disputed, but taking as true the facts in the complaint, they did not receive notice, and even if they did, that notice, as is buttressed by the findings of the U.S. Department of Education, was deficient in that it did not specify who was entitled to benefits or under what circumstances. Well, that doesn't give us the answer to the question before us, does it? Absolutely, Your Honor. And turning now to the issue of funding withdrawal. Before you leave that, though, doesn't that raise a real practical issue, though? I mean, one of the things that I understood Mr. Herman to be saying, Mr. Meikleman, is that if we were to interpret the statute in the way that you are pressing upon us, the school district would be subject to suit any time a parent went in and said, look, I don't like the way this is worded. I don't really think I understand what you're trying to tell me. This is therefore ambiguous, and it's not sufficient notice, and I'm taking you to court. Is that not a practical issue we should be concerned with with the interpretation you suggest? It's a possibility, but because the notice is very specific and clear about what must be provided, there are six specific pieces of information the statute requires to be provided. And I think it would only take one case fleshing out what that means for litigation to be – for this sort of litigation to be shut down. And it might be this case. I think you vastly underestimate the capacity of lawyers to sue and of individual parents who are concerned for their children to feel like somebody else's rights being vindicated didn't vindicate theirs. Well, ultimately, Your Honor, I think the decision whether these provisions are individually enforceable is up to Congress, and if reading their clear language focusing on these beneficiaries, if Congress decides – That's the question for us. And if Congress decides – If Congress later decides, Your Honor, that that is inappropriate and there is a problem with too many lawsuits, they can shut it down. But, Judge Barry, to answer your question directly, it is unambiguous. That's exactly what this Court held in Sabree, where this Court said that the individual focus of that language, similar to this language, as all the members of the panel have noted, the individual focus was unmistakable. And this Court – What's unmistakable in Sabree is that certain things needed to be done. What's unmistakable here is that certain things need to be done. But what is cloudy is whether, if they are not done, an individual is unambiguously given a right to seek a remedy. Your Honor, I believe that is what the Sabree opinion said was unmistakable in saying that the individual focus of those provisions here, and now I'm quoting, the individual focus was unmistakable. But in the case of, I mean, picking up on what Judge Jordan was talking about, really, what are the consequences if we were to rule in your favor? In the Sabree case, the consequences are, you know, there's a few places that somebody might have a claim. Here, you could have inundation, an inundation of the courts with claims that we didn't give notice, we didn't get this right to transfer, we didn't have the SES done properly. And the thought is if Congress is going to say that if that isn't complied with, the individual parent of the child has the right to bring an action, Congress really needs to just come out and say it. Wouldn't you have expected that if Congress, in trying to reach out to troubled school districts, had intended for them to be sued at the will of every individual parent, they might have said that pretty clearly? Instead of, you have an objection to the Secretary. But, Your Honor, the funding withdrawal has never been held to be a sufficient alternative remedy to foreclose individual enforcement. In fact, when the Supreme Court. But that is not the issue before us. I mean, I have language here from one of our very respected judges on this court. Quote, do we really believe that Congress, with its legislative aides, lawyers, paralegals, assorted staff, is unable to state in simple declarative language that anyone injured by a violation of that statute may file suit in federal court? Or do we really believe it's simply forgot? I'm speaking only for myself. Where does it say that a parent, child injured by a violation may file suit in federal court? Section 1983, Your Honor. The Congress legislates against the backdrop of this understanding of federal laws. That issue, though, until you've got a clearly ambiguous declaration by Congress that they can go there. Clearly unambiguous. But for this court to hold that the declarations, the specific provisions contained in this statute do not rise to the level of clearly unambiguous rights would be in direct conflict with this court's careful textual analysis in Sabree and would throw this circuit's 1983 jurisprudence into disarray. In fact, litigants and Congress would not. How would it throw the 83? I certainly understand your point about Sabree. But how would viewing this statute, for a whole number of reasons, since Sabree was an opinion that went through a balancing process, if we balanced and viewed this statute differently, how does that affect 1983 jurisprudence generally? I believe it creates confusion because courts and, in fact, Congress won't know how to unambiguously confer a right. With simple declarative sentences like Ted Slover said. Well, I believe the case books are replete with instances in which enforceable rights were found, even though Congress didn't say specifically expressly that there is a private right of action. That's the idea of 1983. You have to also distinguish the spending clause cases, though. But Sabree was a spending clause case. I understand. And it's also important, I think, to look at Titles VI and IX, which the Supreme Court in Gonzaga held up as exemplars of rights-creating language. Those provisions were about entities receiving federal funds. So, once again, the possibility of funding withdrawal was not determinative of the issue, whether people could sue. And the Gonzaga Supreme Court decision made very clear that Titles VI and IX do create rights in Sabree. This Court found the provisions with identical structure to those at issue here were unambiguous. They were difficult, in the Court's words, if not impossible. No district court, no circuit court has decided this issue yet. No district court, to my understanding, has held that the Act confers any enforceable individual right of action, correct? Correct, Your Honor. There's one district court that has held to the contrary. That's the Southern District. The Acorn case, yes, Your Honor. You don't have any, you really don't have any cases. Is there anything in legislative history, although I'm not a big fan of legislative history, is there anything in the legislative history that says, yep, we intended, we do intend to give parents the right to enforce violations of the No Child Left Behind Act? Is there any case that says that? To answer your question. As far as cases go, there is no case so far. There's one district court on the other side, but that district court did not have the benefit of Sabree. As to the legislative history, the legislative history is replete with references by the committee report and by the Senate committee members that state that parents shall have options, parents shall have rights, parents shall be given notice. These legislators were very concerned. Isn't that a statement, this sort of aspirational statement about the needs of people in the aggregate that the Supreme Court in Gonzaga was talking about when it said, look, the focus out here in FERPA is on the needs of students generally to be protected from having their private information go out. And here the need to be addressed is the need to engage parents more fully in understanding what's going on in their schools. It seems like it falls directly into Gonzaga's aggregate focus. I don't think so, Your Honor. Consider, for example, the tutoring provision. It not only provides that the LEA shall arrange for the provision of services for children, but that the parents themselves have the option to select the provider from a list of approved providers and to get help if they need in selecting a provider from the LEA. Unless there are no providers in the area and there's enough, right? Sure. They have no right. They have no right. The state can waive the right. But absent waiver by the state, this is a right the Congress was very concerned that parents obtain and that they be able to obtain in turn. But is it a right, I go back to the bottom line, is it a right that the individual can enforce in federal court? I think we understand your arguments. Are there any other questions, Judge Ambrose or Judge Jordan? No. Thank you very much. Very well argued. We will take the case under advisement.